UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYRONE L. JONES, | : |
| | : |
| *Plaintiff*, | : |
| | : |
| v. | :    No. 3:20-cv-00963-SDV |
| | : |
| ANDREW M. SAUL, | : |
| | : |
| Commissioner of | : |
| Social Security, | : |
| | : |
| *Defendant*. | : |
| _____ | : |

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of plaintiff, Tyrone L. Jones', application for Title II disability insurance benefits ("DIB") and Title XVI disabled spouse benefits ("DSB"). This appeal is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration (hereinafter, "the Commissioner" or "defendant"), or in the alternative, remanding for further proceedings. (Doc. No. 17). Defendant, in turn, filed a motion for an order affirming the decision of the Commissioner. (Doc. No. 21). After careful consideration of the arguments raised by both

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can, in turn, appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the Appeals Council declines review or affirms the ALJ opinion, the claimant may appeal to the United States District Court. The Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

parties and a thorough review of the administrative record, the Court: 1) **GRANTS** defendant's motion for an order affirming the commissioner's decision and 2) **DENIES** plaintiff's motion to reverse the decision of the commissioner.

I.      **LEGAL STANDARD**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and durational requirements are met, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and

(5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). It must be "more than a mere scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## II.    PROCEDURAL HISTORY

Plaintiff filed his DIB application on March 20, 2017 and his DSB application on March 22, 2017. (R. 16, 49). The claim was initially denied on September 29, 2017 and denied upon reconsideration on July 10, 2018. (R. 16). Thereafter, plaintiff requested a hearing. *Id*. On April 24, 2019, a hearing was held before Administrative Law Judge I. K. Harrington (hereinafter, the "ALJ"). (R. 58). Plaintiff, who was represented by counsel, testified at the hearing. (R. 58-86). On May 9, 2019, the ALJ issued a decision denying plaintiff's claims. (R. 28). On May 21, 2019, plaintiff requested review of the ALJ's decision by the Appeals Council. (R. 251–52). On May 13, 2020, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. (R. 1). This action followed.

## III.    FACTUAL BACKGROUND

Plaintiff was born on June 28, 1971. (R. 253). He completed about two years of college. (R. 69). At the time of the hearing, plaintiff lived with his ex-wife in New Haven, Connecticut. (R. 69–70). Plaintiff enrolled in the Army immediately after graduating high school. (R. 69). During his time in the Army, he worked as a utilities worker and was deployed to Iraq during the first Iraq war. (R. 69). Plaintiff stated he incurred a back injury in a van accident while he served in the military. (*See* R. 73–74). He reported suffering from chronic back pain that has worsened since his injury. (R. 74). Plaintiff also testified that he struggles with post-traumatic stress disorder (hereinafter, "PTSD"). (R. 78). He reported receiving disability benefits from Veterans Affairs for his back injury, PTSD, and skin issues.[2] (R. 71). Upon leaving the military, plaintiff worked as an electrician. (R. 26). Plaintiff has not worked since August 2014 when he incurred a

---

[2] The Veterans Affairs agency uses a rating schedule to guide its disability determinations. 38 C.F.R. § 4.1. A disability determination made by another government agency such as the Veterans Affairs is not binding on an ALJ. *Lohnas v. Astrue*, 510 F.Appx. 13, 14 (2d Cir. 2013).

4

second back injury while working as an electrician. (*See* R. 83–84). Plaintiff's second back injury occurred when he twisted his back while reaching for an instrument on his tool belt. (R. 498).

Plaintiff reported his back injuries caused limitations in his ability to function. (R. 74-75). For example, he testified that he can sit for about two (2) hours when in a comfortable chair and approximately one (1) hour in a regular chair. (R. 75). Plaintiff testified that he can sweep for about twenty (20) minutes before needing to take a break. (R. 75). He also testified that he is able to walk for about thirty (30) minutes before he needs to stop and sit. (R. 75). Furthermore, plaintiff claims that he must take a break every ten (10) minutes when leaning over the sink to wash dishes. (R. 77). In terms of his ability to lift and carry, plaintiff stated he can lift and carry cat litter (estimated to be about twenty-five (25) pounds) for short distances such as from the floor "to the cat litter" and from the car into his house. (R. 76). According to plaintiff, carrying cat litter from the car to his house aggravates his back pain and therefore he can only occasionally perform that task. (R. 76–77). Plaintiff also stated that he could occasionally bend to pick up a box of tissues from the ground and put it on the table. (R. 77). Finally, he stated he could not bend to pick up a box of tissues from the ground repeatedly. (R. 77).

Plaintiff also reported suffering from the following symptoms associated with his PTSD: self-isolation behavior, racing thoughts, difficulty paying attention, anxiety and tearfulness. (R. 78–79, 84). In terms of his self-isolating behavior, plaintiff testified he stays in his house "most of the time" because he feels safe in his home, and prefers not to be around people if not necessary. (R. 78). Plaintiff also testified that his anxiety makes it difficult to leave his house because it makes "everything just feel[] overwhelming" most of the time. (R. 80–81). Plaintiff estimated that over the course of one month, he is unable to leave the house half of the days he

wants. (R. 82). Plaintiff also testified that being around people triggers his PTSD. (R. 81). When he is able to leave the house to go shopping, for example, he likes to go when there are less people at the store. (R. 82). Plaintiff reported his difficulty in paying attention is evidenced by the fact that he does not watch much TV but watches short clips on YouTube. (R 79). He does not usually read and does not finish long articles he finds on the Internet. (R. 79). Plaintiff reported using his computer daily and throughout the day for about ten (10) minutes at a time before stopping because he is unable to focus. (R. 80). Finally, in terms of plaintiff's tearfulness, plaintiff testified that he suffers from crying spells. (R. 84). Plaintiff explained that while at work he would cry in the bathroom about five (5) times a day for about five (5) to ten (10) minutes each time. (R. 84). He reported his crying spells have increased. (R. 85).

After his back injury and the onset of his PTSD, plaintiff received medical treatment from various doctors and mental health professionals. (R. 22–24). Plaintiff's medical history is set forth in Exhibit F.

## IV. THE ALJ'S DECISION

The ALJ followed the sequential evaluation process to determine whether plaintiff was disabled under the Social Security Act.

At Step One, the ALJ found plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 16, 2014, through his last insured date of December 31, 2016. (*See* R. 18). At Step Two, the ALJ found plaintiff has the following severe impairments: depression, obesity, degenerative disc disease, post-traumatic stress disorder, and substance abuse. (R. 19). At Step Three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments. (R.18–19). Next, the ALJ determined plaintiff retains the following residual functional capacity[3]:

> [T]o perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except with the following limitations: occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, climbing of ladders, ropes and scaffolds; occasional exposure to unprotected heights; and simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few workplaces changes in a nonpublic work setting, with occasional interaction with coworkers and supervisors.

(R. 21).

At Step Four, the ALJ found plaintiff is unable to perform any past relevant work. (R. 26). Finally, at Step Five, the AJ relied on the testimony of the Vocational Expert (hereinafter, "VE") to conclude there are jobs existing in significant numbers in the national economy that plaintiff can perform. (R. 27–28). Specifically, the VE testified that someone with plaintiff's vocational factors and the assessed RFC can perform the positions of addresser, bench handler, and document preparer. (R. 28, 90). Accordingly, the ALJ determined plaintiff was not disabled from the alleged onset date of August 16, 2014, through the date last insured of December 31, 2016. (R. 28).

## V.     DISCUSSION

### *a. The ALJ's Duty to Develop the Record*

Plaintiff first argues that the undersigned should reverse the ALJ's ruling because the ALJ failed to adequately develop the record. Plaintiff argues that the ALJ erred by failing to obtain medical source statements from any of the physicians or clinicians who treated plaintiff's neck and back pain[4]. Doc. No. 17-2 at 1. According to plaintiff, "[a]lthough there is unanimity of

---

[3] Residual functional capacity (hereinafter, "RFC") is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).
[4] The plaintiff's claim that the ALJ failed to adequately develop the record is only in reference to plaintiff's physical capacity. Plaintiff does not argue anywhere in his brief that the ALJ failed to develop the record as to plaintiff's

opinion in the contemporaneous chart notes of Mr. Jones's treating physicians that he is impaired as a result of his documented spinal deformities, those notes are devoid of opinion as to the physician/clinician's estimation of his function-by-function abilities at any given point in time." Doc. No. 17-2 at 8. For the reasons that follow, the Court finds that the ALJ has fulfilled her duty to develop the record.

The Court's role in reviewing a disability determination is not to make its own assessment of plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). "It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted)). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)). Remand for failure to develop the record is not necessary where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F.Appx 29, at 34.

---

mental capacity. Therefore, because the medical record has sufficient evidence regarding plaintiff's mental capacity, the Court will only address plaintiff's argument as it relates to his physical capacity. *See* R. 1575-1580 (Mental Disorders Disability Questionnaire that discusses functional limitations); R. 1045-46 (Mental health consult note); R. 604-676 (Group therapy session, plaintiff demonstrated improvement); R. 1406, 1373 (Progress review reports reporting moderate progress on PTSD and depression); R. 894-898 (Impairment Questionnaire); R. 1149 (Medical Source Statement from Jesus A. Lago, M.D.); and R. 3100-3103 (Mental Capacity Statement from Sarah Parades, M.D.).

The absence of a medical opinion from a treating physician is not necessarily cause for remand. *Crespo v. Comm'r of Soc. Sec.*, No. 3:18-CV-00435 (JAM), 2019 WL 4686763, at *3 (D. Conn. Sept. 25, 2019) (citing *Tankisi v. Comm'r of Soc. Sec.,* 521 F.Appx 29, 34 (2d Cir. 2013)). Per the regulations in effect when plaintiff filed his Title II and Title XVI applications, "the lack of the medical source statement will not make the [medical] report incomplete." 20 C.F.R. § 404.1513(b)(6). According to the regulations in effect when plaintiff filed his Title II and Title XVI applications, acceptable medical sources are defined as:

> (1) Licensed physicians…(2) Licensed or certified psychologists…(3) Licensed optometrists, for purposes of establishing visual disorders only…(4) Licensed podiatrists, for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle; and (5) Qualified speech-language pathologists, for purposes of establishing speech or language impairments only.

20 C.F.R. § 404.1513(a)(1)–(5).

An ALJ may assess a petitioner's residual functioning capacity without a medical source statement where the medical record is voluminous. *See Tankisi*, 521 F.Appx at 34 (affirming the ALJ's decision in light of the "voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ").

As in *Tankisi*, the voluminous medical record is sufficient to permit an informed residual functioning capacity finding by the ALJ. *See Tankisi*, 521 F.Appx at 34. Here, the administrative record consists of over 3,100 pages. *See* Doc. No. 15. The medical record itself accounts for over 2,600 pages of the administrative record. *See id*. Although the medical record lacks a medical source statement from a treating physician, it includes statements about plaintiff's physical functional abilities from Veterans Affairs (hereinafter, "VA") Physician Assistant A. Alfonso (R. 2476-2483), plaintiff's self-reported statements about his functional abilities to VA Doctor of Physical Therapy (hereinafter, "DPT") Carly Croteau (R. 2347–48; 2370–71), and statements

9

about plaintiff's physical functional abilities from VA Physical Assistant John A. Leach (R. 1542–54). For instance, in a treatment note dated July 26, 2016, PA Alonso noted that pain, weakness, fatigability or incoordination did not significantly limit functional ability with repeated use over time and that, while plaintiff's conditions "limit[] repeated bending, lifting, stooping or carrying loads," plaintiff was "able to perform all sedentary work tasks." (R. 2478-2483). Similarly, on November 1, 2018, PA Leach observed "decreased range of motion because of mild back pain and stiffness," but noted that pain itself and range of motion itself do not result in/cause functional loss. (R. 1544-1545).

Furthermore, the record consists of consultation notes from Neurosurgery Resident, Dr. Adam Kundishora, and Chief of Neurosurgery, Dr. Joseph King, Jr., opining on treatment options including "low impact exercise as possible positive contributors to [plaintiff's] pain/degenerative changes." (R. 786–88). Dr. Kundishora and Dr. King further opined that plaintiff "may never be completely pain free." (*Id.*). PA Leach noted in a "Back Conditions Disability Benefits Questionnaire" that plaintiff's pain noted throughout his examination, "[d]oes not result in/cause functional loss." (R. 1545). In fact, PA Leach reported plaintiff was able to "perform repetitive use testing" associated with the Conditions Disability Benefits Questionnaire without "additional loss of function or range of motion after three repetitions." (R. 1546). PA Leach concluded his examination by reporting plaintiff had "a normal gait; [and] did not have difficulty sitting in a chair or getting onto the exam table." (R. 1553).

From the above statements, the ALJ discussed only how she weighed the statements made by Physician Assistant Alfonso. (*See* R. 25–26). The ALJ need not have mentioned how she weighed the statements by DPT Croteau, PA Leach, Dr. Kundishora and Dr. King because ALJs are "'not required to discuss every piece of evidence submitted.'" *Brault v. Social Sec.*

10

*Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Failure to cite a piece of evidence "does not indicate that such evidence was not considered." *Id.*

Accordingly, under the substantial evidence standard, the Court finds that a reasonable mind may conclude that the ALJ relied on sufficient evidence to formulate plaintiff's RFC. Therefore, the Court finds that the ALJ fulfilled her duty to develop the record and remand is not warranted on this issue.

### b. The ALJ Adequately Accounted for Plaintiff's Pain

Next, plaintiff argues that the undersigned should reverse the ruling because the ALJ inadequately accounted for plaintiff's claims of pain. Doc. No. 17-2 at 10. Specifically, plaintiff argues that the ALJ improperly rejected plaintiff's claims of pain because the record is void of any evidence that refutes that the pain is real. *Id*. Plaintiff argues that without evidence to refute that his pain is real, "the ALJ *must* take these claims [of pain] into account." *Id*. Plaintiff concludes his argument by stating the ALJ's treatment of his claims of pain amounts to an "adverse credibility finding in a different guise." *Id*. at 12.

For the reasons that follow, the ALJ adequately weighed plaintiff's pain and therefore remand is not warranted.

It is the function of the ALJ, not the reviewing court, to "resolve evidentiary conflicts and appraise the credibility of the witness, including the claimant." *Carroll v. Sec'y. of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "While the ALJ is required to take into account the claimant's reports of pain and other limitations, the ALJ is not required to accept the claimant's subjective complaints without question." *Cherry v. Colvin*, Civil No. 3:13CV1440(WIG), 2015 WL 13729868, at *7 (Jun. 29, 2015). Instead, an ALJ "may weigh the

credibility of the claimant in light of the other evidence of record." *Taylor v. Astrue*, Civil No. 3:09CV1049(MRK)(WIG), 2010 WL 7865031, at *9 (Aug. 31, 2010). An ALJ follows a two-step process for evaluating a "claimant's complaints of pain and other limitations." *Id*. The two-step process set forth by the regulations is as follows:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. At the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record. Factors that will be considered are the claimant's daily activities; the location, duration, frequency and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to relieve the symptoms; treatment, other than medication; any other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitation and restrictions due to pain and other symptoms.

*Id*. (internal citations omitted).

Here, the ALJ applied the proper analysis set forth in the regulations when she discounted plaintiff's claims of pain. First, the ALJ found that plaintiff has a medically determinable impairment that could reasonably be expected to produce his symptoms of back pain. (R. 22). Next, the ALJ found that, "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. The ALJ explained that "[d]espite the claimant's allegations of physical pain, the medical evidence shows only mild physical findings." (R. 22). The ALJ first explained her finding by contrasting claimant's allegations that his "upper back pain made it impossible [] to move without feeling excruciating pain" with objective medical evidence from the VA showing mild to minimal physical abnormalities in his lower extremities and back. (R. 22–23). For example, the ALJ contrasted plaintiff's aforementioned statement with medical evidence indicating he had "5/5 muscle strength in his lower extremities, normal sensation, and

12

only slightly hypoactive reflexes." *Id*. The ALJ also pointed to plaintiff's radiology results showing no physical abnormalities of his spine and only "mild" and "mild-to-moderate" neuroforaminal stenosis at L5-S1 and L4-L5, respectively. (R. 23). It is reasonable to conclude that these mild medical findings are inconsistent with plaintiff's claims that his pain "made it impossible for him to move without feeling excruciating pain, which limits him to bed rest or staying seated without moving." (R. 22-23).

Next, the ALJ considered plaintiff's treatment. (R. 23). In her analysis, the ALJ notes plaintiff's failure to obtain treatment from a medical specialist for his back pain for nearly two years after his alleged onset date. *Id*. The ALJ found that the "delay in seeking specialized treatment is not consistent" with plaintiff's pain allegations. *Id*. The ALJ also notes plaintiff's back pain was noted to improve with his physical therapy treatment. *Id*; *see also,* R. 1723 (progress note by Carly Croteau, DPT, noting "[plaintiff] reports he feels [Pain Rehab School] has helped."). Furthermore, the ALJ noted plaintiff failed to follow treatment recommendations for his back pain, such as when he "was discharged from physical therapy after failing to show for two consecutive appointments." (R. 24).

In analyzing plaintiff's daily activity, the ALJ also found that plaintiff's level of daily activity was inconsistent with his claims of pain. *Id*. The ALJ noted plaintiff had completed a summer course; reported doing "household chores, drives, goes out alone, shops in stores, pays bills, and uses the computer;" and, according to a therapy note, has minimal difficulty carrying groceries. *Id*. Finally, the ALJ noted that plaintiff stated in August 2016 that he was "able and willing to work." *Id*.

Given the inconsistency between plaintiff's claims of pain and his reported activities, it is reasonable that the ALJ could formulate an RFC stating plaintiff can perform sedentary tasks

13

with limitations. Accordingly, the Court finds that the ALJ properly accounted for plaintiff's claims of pain and therefore remand is not warranted on this issue.

### c. The VE's Job Incidence Data Was Supported by Substantial Evidence

Finally, plaintiff argues that the Court should reverse the ALJ's ruling because the Step Five findings were not supported by substantial evidence. Specifically, plaintiff argues the Step Five findings were void of substantial evidence because the VE did not identify the sources she relied upon when she provided her job incidence data. Doc. No. 17-2 at 17.  For the reasons that follow, the Court finds that the VE's job incidence data was supported by substantial evidence.

At Step Five, the Commissioner must show the existence of work in the national economy that a claimant can perform. 20 C.F.R. § 404.1512(b)(3)(2017). To satisfy this burden, "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based [the] opinion," and the hypotheticals "accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal quotation marks and citations omitted).

The Court determines the substantiality of a VE's testimony through a case-specific inquiry. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019). The inquiry "takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close." *Id*. Furthermore, it has been recognized that "the substantial evidence standard does not foreclose an ALJ from relying on the expertise of a vocational expert and to do so without requiring the expert to lay a further foundation about the sources that the expert has consulted in order to arrive at the expert's job-number information." *Crespo*, 2019 WL 4686763, at *9. Therefore, a VE's

testimony may count as substantial evidence "even when unaccompanied by supporting data." *Biestek*, 139 S. Ct. at 1155.

Plaintiff's argument that the VE must, at minimum, provide the methodology relied upon to arrive at their job incidence data would require more of the VE than the Supreme Court requires in *Biestek*. Here, the VE's resume illustrates that she has approximately 17 years of experience in vocational counseling. (R. 473–76). When asked if plaintiff objected to the VE's qualifications to testify as the vocational expert, plaintiff did not object. (Tr. 86). Rather, plaintiff objected to the VE providing job incidence data. *Id*. Plaintiff neither provided reasoning as to why he objected to the VE providing job incidence data nor did he cross-examine the VE to undermine her testimony. *Id.* Later in the hearing, when the ALJ asked the VE about testimony she provided that was *inconsistent* with the DOT, the VE stated she relied upon her "31 years of experience working directly with employers" to support her findings. (Tr. 90–91). Plaintiff did not object to the VE relying upon her professional experience to support her findings. *Id*.

The ALJ could reasonably conclude that the VE's extensive professional experience meets the low evidentiary bar set forth by *Biestek* and substantial evidence review. Accordingly, the Court finds that there was no error at step five and the VE's failure to identify the sources of her job-incidence data does not require a reversal of the ALJ's decision.

## VI. CONCLUSION

For the reasons set forth above, the Court **DENIES** plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 17), and **GRANTS** defendant's Motion to Affirm the Decision of the Commissioner (Doc. No. 21).

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of

Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 7th day of September, 2021, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge